UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CHRISTOPHER POWELL,

                Plaintiff,

-against-

NANCY A. BERRYHILL, Commissioner of Social Security,

                Defendant.

17-cv-8922 (NSR)(PRD)
OPINION & ORDER

NELSON S. ROMÁN, United States District Judge:

Plaintiff Christopher Powell ("Plaintiff") commenced this action, pursuant to 42 U.S.C. § 405(g), challenging the administrative decision of the Commissioner of Social Security ("Defendant" or "Commissioner"), which denied Plaintiff's applications for Supplemental Social Security Income benefits ("SSI"), finding him not disabled under the Social Security Act ("SSA"), 42 U.S.C. §§ 423 *et seq*. This case was referred to Magistrate Judge Paul E. Davison ("MJ Davison"), pursuant to 28 U.S.C. § 636(b) and Federal Rule of Civil Procedure 72(b), to issue a Report and Recommendation ("R & R") on Plaintiff's motion and Defendant's cross-motion for judgment on the pleadings. (ECF No. 9 and 11). Now before the Court is MJ Davison's R & R, recommending that Plaintiff's motion be denied and Defendant's cross-motion be granted and that the case be remanded back to the Commissioner for further proceedings. (See ECF No. 14.) The Parties had until March 11, 2019, to object to the R & R but no objection was filed. For the following reasons set forth below, Plaintiff's motion for judgment pleadings is DENIED, and Defendant's cross-motion for judgment on the pleadings is GRANTED.



1

**BACKGROUND**

The following facts are summarized and taken from the administrative record and the parties' submissions.(ECF No. 7,9,11)

**Procedural History**

On or about June 30, 2014, Plaintiff applied for SSI, alleging that he had been disabled since September 6, 2013 due to a back injury and pain down his legs. (R. 141-42, 158.) Plaintiff's claim was administratively denied on or about August 21, 2014. (R. 81-83.) Plaintiff requested and was granted a hearing before Administrative Law Judge Mary Withum ("ALJ Withum"). (R. 90.) Plaintiff appeared with counsel and testified at a hearing. (R. 30-57.) On August 3, 2016, ALJ Withum issued a decision wherein she concluded that Plaintiff was not disabled within the meaning of the SSA. (R. 21-32.) Plaintiff's request for review was denied by the Appeals Council on September 25, 2017. (R. 1-6.) Plaintiff thereafter timely commenced this action on November 15, 2017.

**Facts**

Plaintiff was born on April 1, 1983. (R. 141.) On September 6, 2013, Plaintiff was taken to the emergency room after he lifted a door at work and experience severe, sudden, bilateral low back pain. (R. 227, 449.) After a physical examination, Plaintiff was found to have normal strength, sensation, reflexes, and coordination in him extremities. (R.22) nfdischarged and prescribed pain medication and instructed to follow-up with his doctor. (R. 229)

On September 10, 2013, Plaintiff was examined by a Dr. Richard Memoli who found Plaintiff had severe muscle spasms and a restricted range of motion ("ROM"). (R. 459) Dr. Memoli referred Plaintiff to Dr. Olsewski, a nuerosurgeon, and prescribed pain medication and chiropractic treatment. (Id.)

On September 25, 2013, Plaintiff was examined by Dr. Cohn, an internist, for numbness and tingling in his lower extremities, low back stiffness and severe pain, and moderate inability to perform activities of daily living ("ADL"). (R. 509-10.) Dr. Cohn found lower back pain, tenderness, spasms and decreased ROM. (R. 511.) Plaintiff was prescribed medical massage therapy. (Id.)

On September 26, 2013, Plaintiff was evaluated by Dr. John Olsewski, a neurosurgeon. (R. 677-79.) Plaintiff complained of back pain, left lowere extremity pain with paresthesias and weakness. (R. 677) Upon examination, Dr. Olsewski noted Plaintiff's gait was antalgic, favoring the left extremity, straight leg rising test showed positive for pain at 30 degrees and difficulty walking on his toes. (Id.) Dr. Olsewski reviewed an MRI of Plaintiff's back which showed "2 level lumbar spondylosis[1] with disc herniations and high intensity zones spinal stenosis at L4-L5 and L5-S1." (R. 678.) An EMG study was consistent with left side radiculopathy[2] at L5 and S1. (Id.) Dr. Olsewski discussed the possibility of surgery but recommended an initial trial of conservative non-surgical management. (R. 678, 682.)

On September 30, 2013, Dr. Cohn noted that Plaintiff's condition was improving with medical massage therapy but still complained of "ongoing pain."(R. 514) Plaintiff's condition began to improve with medical massage therapy. (R. 517, 520, 523, 526, 529, 532.) Plaintiff reported that the pain improved with stretching, ice, heat, rest, sitting, and medications and that he was able to perform ADLs. (R. 557.) Plaintiff continued to consult with his doctors, including Dr. Gopal, for physical therapy, and continued to receive treatment until June 3, 2014. Up until June 3, 2014, Plaintiff continued to complain of pain in his back and lower extremities, showed

---

[1]Spondylosis is defined as a "non-inflammatory degenerative disease of the spine resulting in abnormal bone development around the vertebrae and reduced mobility of the intervertebrral joints.
[2]Radiculopathy is defined as an irritation of or injury to a nerve root (as from being compressed) that typically causes pain, numbness, or weakness in the part of the body which is supplied with nerves from that root

sign of decreased ROM and continued to experience pain radiating down his left extremity, but his doctors believed his prognosis was good. (R. 591, 595.) An electrodiagnostic test performed on November 12, 2013 showed evidence of a right L5-S1 nerve root irritation and a left L5-S1 radiculopathy. (R. 456)  An MRI performed on Novemebr 18, 2013, revealed: osteoarthritic changes at L2-L3, L3-L4, L4-L5 and L5-S1; disc dessication at L4-L5 and L5-S1; and no evidence of disc herniations.

On June 3, 2014, Dr. Olsewski performed lumbar spinal surgery. (R. 663-64, 668-70.) After the surgery, Plaintiff still complained of back pain. (R. 692.) His doctors continued to recommend physical therapy. (*Id*.) Dr. Olsewski noted that the surgery appeared successful. (R. 666.) On multiple occasions post-surgery, Plaintiff was able to complete all physical therapy exercises, and experienced some discomfort sporadically. (R. 620, 623, 626, 633, 636, 639, 642, 645, 648, 651, 654) On November 20, 2014, Dr. Olsewski noted that Plaintiff was "doing very well," and that Plaintiff considered returning to work in January 2015. (R. 736.)

In connection with Plaintiff's worker compensation claim, Plaintiff was examined by Dr. Howard Katz on November 24, 2014. (R. 754-759.) Dr. Katz opined that there was "evidence of mild partial disability" and that Plaintiff's prognosis was fair. (R. 758.) Plaintiff returned to Dr. Olsewski on January 15, 2015 where he stated that he was better than before the surgery. (R. 779.) He also stated that he had not had physical therapy since October 2014. (*Id*.) Dr. Olsewski recommended Plaintiff return to physical therapy. (*Id.)* Plaintiff's last recorded physical therapy session was on January 23, 2015. (R. 764-65.) On June 9, 2015, Dr. Olsewski noted that Plaintiff had reached "maximum medical improvement." (R. 783.) Finally on September 23, 2015, Plaintiff was evaluated by Dr. Roger Antoine as part of his worker compensation claim. (R. 770-

75.) Dr. Antoine opined that there was "evidence of mild partial orthopedic disability." (R. 774-75.)

Plaintiff's Chiropractic records are similar. Plaintiff's complaints of pain were consistent at each session. (R. 419, 421, 423, 425.) On November 20, 2013, Dr. Janice Salayka concluded that Plaintiff had "a mild partial degree of disability" and "found no objective evidence of need to limit activities of daily living." (R. 469.) She opined that Plaintiff was unable to return to work, and recommended that he seek other treatment options. (*Id.*) On December 30, 2013, Dr. Salayka found "no degree of disability" and "no objective evidence of need to limit activities of daily living." (R. 466.) She opined that plaintiff was able to return to work. (*Id.*) Plaintiff returned to full-time work on November 20, 2015 as an electrician for Con Edison. (R. 41-42.)

LEGAL STANDARD

A magistrate judge may "hear a pretrial matter [that is] dispositive of a claim or defense" if so designated by a district court. Fed. R. Civ. P. 72(b)(1). In such a case, the magistrate judge "must enter a recommended disposition, including, if appropriate, proposed findings of fact." *Id.*; *accord* 28 U.S.C. § 636(b)(1). When reviewing an R &R, a district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). A district court may also "adopt those portions of the [Report] to which no objections have been made and which are not facially erroneous." *West v. Sheahan*, No. 12-CV-08270, 2016 WL 67789, at *1 (S.D.N.Y. Jan. 4, 2016) (quoting *Wilds v. United Parcel Serv., Inc.*, 262 F. Supp. 2d 163, 170 (S.D.N.Y. 2003)).

In reviewing a decision of the Commissioner, a district court may "enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g); *See* 42 U.S.C. § 1383(c)(3). "It is not the function of a reviewing

5

court to decide *de novo* whether a claimant was disabled." *Melville v. Apfel*, 198 F.3d 45, 52 (2d. Cir. 1999). Rather, the court's review is limited to "determin[ing] whether there is substantial evidence supporting the Commissioner's decision and whether the Commissioner applied the correct legal standard." *Poupore v. Astrue*, 566 F.3d 303, 305 (2d. Cir. 2009) (quoting *Machadio v. Apfel*, 276 F.3d 103, 108 (2d Cir. 2012)).

The substantial evidence standard is "even more" deferential than the "clearly erroneous standard." *Brault v. Soc. Sec. Admin.*, 683 F.3d 443, 448 (2d Cir. 2012). The reviewing Court must defer to the Commissioner's factual findings and the inferences drawn from those facts, and the Commissioner's findings of fact are considered conclusive if they are supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Shaw v. Chater*, 221 F.3d 126, 131 (2d. Cir. 2000). Substantial evidence is "more than a mere scintilla" and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Lamar v. Comm'r of Soc. Sec.*, 562 F.3d 503, 507 (2d Cir. 2009). "In determining whether the agency's findings are supported by substantial evidence, the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inference can be drawn." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). "If evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld." *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014).

"However, where the proper legal standards have not been applied and 'might have affected the disposition of the case, the court cannot fulfill its statutory and constitutional duty to review the decision of the administrative agency by simply deferring to the factual findings of the Administrative Law Judge. Failure to apply the correct legal standards is ground for reversal.' " *Velez v. Colvin,* No. 14-CV-3084, 2017 WL 1831103, at *15 (S.D.N.Y. June 5,

2017) (citing *Pollard v. Halter*, 377 F.3d 183, 189 (2d Cir. 2004)). Thus, "[w]hen there are gaps in the administrative record or the Administrative Law Judge has applied an improper legal standard," or when the Administrative Judge's rationale is unclear in relation to the record evidence, remand to the Commissioner "for further development of the evidence" or for an explanation of the Administrative Judge's reasoning is warranted. *Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir. 1996).

Under the SSA, a claimant is disabled when he lacks the ability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). In addition, a person is eligible for disability benefits under the SSA only if:

> his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

Id. at § 423(d)(2)(A).

SSA regulations set forth a five-step analysis for evaluating whether a person is disabled under the SSA:

(1) Whether the claimant is currently engaged in substantial gainful activity;
(2) Whether the claimant has a sever impairment or combination of impairments;
(3) Whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairment;
(4)Based on the "residual functional capacity" assessment, whether the claimant can perform any of his past relevant work despite the impairment; and
(5)Whether there are significant numbers jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre*, 758 F.3d at 150 (citing 20 C.F.R. §§ 404.1520(a)(4)(I)-(v); 416.920(a)(4)(I)-(v)).

The claimant bears the burden of proof as to the first four steps of the process. *See Bergess v. Astrue*, 537 F.3d 117, 120 (2d Cir. 2008). If the claimant proves that his impairment prevents him from performing his past work, the burden shifts to the Commissioner at the fifth and final step. *See Brault*, 683 F.3d at 445.

## DISCUSSION

The Parties did not submit any objection to the R & R. Thus, the Court reviews the R&R for clear error. In denying Plaintiff's motion, MJ. Davison determined, *inter alia*, that substantial evidence supports the Commissioners finding that Plaintiff is "not disabled as defined in the SSA. This Court agrees with MJ Davison's assessment.

In his motion for judgment on the pleadings, Plaintiff challenges the ALJ's decision on three grounds: (1) the ALJ failed, at step two, to consider the combined effect of all of plaintiff's impairments on his ability to function;[3] (2) at step three, the ALJ should have obtained medical expert testimony in order to ascertain whether the combination of Plaintiff's impairments medically equaled the severity of one of the listed impairments; and (3) the ALJ "failed to accord weight to the various treating physicians who examined Plaintiff and failed to provide 'a good reason' for doing so." (EFC. No. 10, p. 13-16.) In opposition and in support of their motion, Defendant argued that the ALJ applied the correct legal standard(s) and that substantial evidence supports the ALJ's decision. (EFC. No. 11, p. 13-18.)

The Court agrees with MJ Davison's finding that the ALJ did not fail to consider whether Plaintiff's obesity, in combination with his other impairments, constituted a

---
[3]Plaintiff argued that the ALJ failed to consider Plaintiff's obesity, in combination with his other impairments, in determining whether collectively they constitute a "severe" impairment.

8

"severe" impairment. The ALJ specifically addressed Plaintiff's obesity after she listed the impairments she determined to be "severe." (R. 26.) The ALJ stated that she considered Plaintiff's obesity in terms of its possible effect on his ability to work. (*Id.*) Because Plaintiff never stated that he had any difficulties working because of his obesity, Plaintiff claimed obesity impairment is nonsevere. (*Id.*) Therefore, the ALJ set forth the correct standard, found no evidence that Plaintiff's obesity alone significantly limited his ability to work, and absent any statement from Plaintiff that he had difficulties working because of his obesity, concluded that his obesity, in combination with his other impairments, did not significantly limit his ability to work.

Nor did the ALJ err at Step Three. Plaintiff argues that the ALJ erred at Step Three because (1) she "summarily stated that Listing 1.04 did not apply," and she should have obtained medical expert testimony in order to ascertain whether the combination of plaintiff's impairments medially equal the severity of one of the listed impairment. (EFC. No. 10, p. 14.) Listing 1.04 requires:

> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);
> or
> B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours;
> or
> C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

20 C.F.R. § Pt. 404, Subpt. P, App. 1 § 1.04

Plaintiff bears the burden of demonstrating that the Listing criteria are met. *See Burgess v. Astrue*, 537 F.3d 117, 120 (2d Cir. 2008). In order to satisfy this burden, Plaintiff must "meet all of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Perozzi v. Berryhill*, 287 F. Supp. 3d 471, 482 (S.D.N.Y. 2018); *see* 20 C.F.R. § 404.1525(c)(3). Plaintiff does not point to any medical finding suggesting that his combination of impairments meets or medically equals Listing 1.04. Plaintiff is correct in his assertion that the ALJ did not specify which element or elements of Listing 1.04 were not met. However, "the absence of an express rationale for an ALJ's conclusions does not prevent [the Court] from upholding them so long as [the Court] is 'able to look to other portions of the ALJ's decision and to clearly credible evidence in finding that [her] determination was supported by substantial evidence.' " *Salmini v. Comm'r of Soc. Sec.*, 371 F. App'x 109, 112 (2d Cir. 2010). The Court agrees with MJ Davison's conclusion that the record contains substantial evidence to support the ALJ's conclusion that Plaintiff did not meet his burden at step tree. The record is devoid of medical evidence to would support Plaintiff's argument that his impairments rise to the level of Listing 1.04. (*See, e.g.*, R. 616, 629, 692, 762, 764) (multiple post-surgery treatment records specifically note an absence of radicular pain). Plaintiff also argues that an ALJ should consult a medical expert on the issue of whether a listing has been met or equaled. However SSA regulations have no such requirement. *See Rivera v. Comm'r of Soc. Sec.*, 15-CV-8439, 2017 WL 120974, at *10 (S.D.N.Y. Jan 12, 2017), *report and recommendation adopted*, 2017 WL 946296 (S.D.N.Y. Mar 9, 2017). "Where there are no obvious gaps in the administrative record, and where the ALJ already possess a complete medical history," as is the case here, "the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim." *Rosa v. Callahan,* 168 F.3d 72, 79 n.5 (2d Cir. 1999).

Lastly, Plaintiff argues that the ALJ "failed to accord weight to the various treating physicians who examined Plaintiff and failed to provide 'a good reason' for doing so." The ALJ must give "controlling weight" to a "medical opinion" from a claimant's "treating source" if the treating source's opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the administrative record. 20 C.F.R. § 404.1527(c)(2). Plaintiff has failed to identify which medical opinions the ALJ failed to properly consider. The Court agrees with MJ Davison's determination that Plaintiff's assertions are conclusory and do not provide a basis for remand.

## CONCLUSION

For the reasons set forth above, upon a review of the record and the ALJ's decision, the Court finds no clear error and adopts MJ Davison's R & R in its entirety. Plaintiff's motion for judgment on the pleadings is DENIED and Defendant's cross-motion for a Judgment on the Pleadings is GRANTED. The Clerk of the Court is respectfully directed to terminate the motions at EFC Nos. 9 and 11, and to terminate the action.

Dated: March 28, 2019　　　　　　　　　　　SO ORDERED:
White Plains, NY

　　　　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　　　NELSON S. ROMÁN
　　　　　　　　　　　　　　　　　　　　　United States District Judge